# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELITA M. CHEGUP, TARA J. AMBOH, MARY CAROL JENKINS, and LYNDA M. KOZLOWICZ,<br><br>　　Plaintiffs,<br><br>vs.<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, a federally recognized Indian tribe; THE TRIBAL BUSINESS COMMITTEE FOR THE UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION; LUKE DUNCAN; TONY SMALL; SHAUN CHAPOOSE; EDRED SECAKUKU; RONALD WOPSOCK; AND SAL WOPSOCK,<br><br>　　Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:19-cv-00286-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Ute Indian Tribe of the Uintah and Ouray Reservation, Tribal Business Committee for the Ute Indian Tribe of the Uintah and Ouray Reservation, Luke Duncan, Tony Small, Shaun Chapoose, Edred Secakuku, Ronald Wopsock, and Sal Wopsock's Motions to Dismiss [ECF Nos. 45, 62, 67, and 68] Plaintiffs Angelita Chegup, Tara Amboh, Mary Carol Jenkins, and Lynda Kozlowicz's Civil Rights Complaint and Petition for Writ of Habeas Corpus, and Plaintiffs' Motion for Immediate Release [ECF No. 20].[1] The court held a hearing on the motions on November 12, 2019. At the hearing,

---

[1] After Defendants filed a motion to dismiss all claims against all Defendants [ECF No. 45], Defendants Edred Secakuku, Ronald Wopsock, and Sal Wopsock filed three individual motions to dismiss [ECF Nos. 62, 67, and 68]. As will be discussed below, because the motion to dismiss all Defendants is dispositive of this case, the court will not address the individual motions to dismiss.

Defendants were represented by J. Preston Stieff, and Plaintiffs were represented by Ryan D. Dreveskracht and Kent A. Higgins. The court took the matters under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs are enrolled members of the Ute Indian Tribe of the Uintah and Ouray Reservation (the "Tribe"), which is a federally recognized Indian tribe in the State of Utah. Defendants Luke Duncan, Tony Small, Shaun Chapoose, Edred Secakuku, Ronald Wopsock, and Sal Wopsock are members of the Tribal Business Committee for the Ute Indian Tribe of the Uintah and Ouray Reservation (the "Business Committee"), the governing body of the Tribe. In 2018, the Tribe filed a lawsuit in federal court in the District of Columbia wherein it alleged that the United States was violating federal law by treating certain reservation lands as though they were owned by the United States outright, rather than in trust for the Tribe.[2] The Tribe claimed that, as a result, the United States has been wrongfully appropriating revenue relating to the sale or lease of lands within the Uintah and Ouray Reservation (the "Reservation"). The Tribe also averred that Bureau of Land Management employees have been continuously trespassing upon Reservation lands to the extent that such employees have entered Reservation lands without the Tribe's authorization. Accordingly, the Tribe sought injunctive relief along with an order quieting title in the name of the United States.

After the Tribe filed the lawsuit, Plaintiffs filed a motion to intervene. Specifically, Plaintiffs argued that the subject land should be preserved for the Uintah Band of Ute Indians,

---

[2] *Ute Indian Tribe of the Uintah and Ouray Reservation v. United States of America*, No. 1:18-CV-00546 (D.D.C. filed March 8, 2018).

not the Tribe. The Tribe opposed Plaintiffs' request to intervene, and the court eventually denied Plaintiffs' motion.

In October 2018, the Business Committee received a complaint from seventy members of the Tribe wherein Tribe members requested the banishment of Plaintiffs based on alleged acts arising from Plaintiffs' attempted intervention into the Tribe's case that seriously threatened the peace, health, safety, morals and general welfare of the Tribe. More specifically, the complaint alleged that Plaintiffs had (1) repeatedly interfered in the Tribe's ongoing litigation; (2) caused repeated delays and confusion in cases impacting the well-being of the Tribe; (3) engaged in vexatious litigation with the purpose of delaying legal proceedings and confusing legal issues; (4) sought to destabilize the tribal government and waste its resources; and (5) cost the Tribe millions of dollars in unnecessary legal fees by imprudently intervening into cases involving the Tribe.

Based on the allegations in the complaint, the following month, the Business Committee issued Resolution No. 18-472, which began the process of banishing Plaintiffs. The Resolution was unanimous and signed by each member of the Business Committee. In addition to initiating the banishment process, it mandated that the complaint and a notice of hearing be served on Plaintiffs. In due time, the Business Committee issued a notice of hearing to each Plaintiff and set a hearing to take place in one week at the Business Committee Chambers. The notice provided that Plaintiffs could appear with counsel and present evidence on their own behalf. Importantly, the hearing was meant for the Business Committee to ultimately decide whether Plaintiffs should be banished from the Reservation.

In preparing for the hearing, Plaintiff Tara Amboh attempted to file document requests with the Tribal Secretary seeking any evidence that would be used against her as well as any

3

policy that would be implemented at the hearing. The Tribal Court Clerk, however, only served Amboh with the papers regarding the hearing, and refused to acknowledge any other document request.

Plaintiffs obtained counsel on the day of the hearing, but given the short time period between receiving the notice and the date of the hearing, their attorney was unable to appear in person. Accordingly, on behalf of all Plaintiffs, Amboh wrote to the Business Committee and suggested allowing their counsel to appear telephonically. When Plaintiffs were later called into the Business Committee Chambers for the hearing, the Business Committee informed them that they would not allow Plaintiffs' attorney to appear telephonically because Tribal guidelines did not allow for telephonic participation, and they had given Plaintiffs reasonable time to provide for an attorney's attendance. Upon learning this information, Plaintiffs left the hearing before it began. Nevertheless, the Business Committee proceeded with the hearing and passed a motion to banish Plaintiffs pursuant to Tribal Ordinance No. 14-004.

Following the hearing, the Business Committee promptly issued an Order of Banishment to each Plaintiff. The Orders provided that (1) Plaintiffs were temporarily excluded, banished, and ordered subject to removal from the Reservation for a period of five years; (2) Plaintiffs had caused the Tribe financial losses in the amount of $242,982.93 and were therefore fined in that amount; (3) Plaintiffs' dividends and bonuses would be garnished at a rate of up to 100% until the fine was paid in full; (4) Plaintiffs' rights to tribal employment and housing were revoked during the term of their banishment; (5) Plaintiffs could only enter the Reservation for a limited number of purposes; and (6) based on those limitations, Plaintiffs would be required to provide the Business Committee with fourteen days' written notice of their intent to visit the Reservation and the purpose for the visit.

Because Plaintiffs were unaware of any type of appellate review process to challenge the Business Committee's decision to banish them, they filed the instant suit in this court on April 29, 2019 and asserted two claims for relief. First, Plaintiffs contend that Defendants violated their rights under the Due Process Clause of the Indian Civil Rights Act of 1968 ("ICRA") (25 U.S.C. §§ 1302(8)). Second, they aver that Defendants violated their right to be informed of charges and confront witnesses under ICRA (25 U.S.C. § 1302(6)). In sum, Plaintiffs claim that their liberty has been severely restrained by Defendants' actions. Plaintiffs contend that they have been stripped of their homes, employment, retirement plans, health insurance, and healthcare and precluded from participating in tribal ceremonies and cultural events. Given the severity of the alleged restraints on Plaintiffs' rights, Plaintiffs filed a Motion for Immediate Release in which they ask the court to issue an order reinstating their rights pending the resolution of their complaint.

## DISCUSSION

### A. Motion to Dismiss

Defendants now move to dismiss Plaintiffs' complaint and petition for, among other reasons, lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] Subject-matter jurisdiction is a court's "statutory or constitutional power to adjudicate [a] case." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). At the federal level, district courts have limited subject-matter jurisdiction and "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Id.* at 1125. "The objection that a federal court lacks

---

[3] Defendants also move for dismissal pursuant to rules 12(b)(2), 12(b)(5), and 12(b)(6). But because the court can resolve the pending motions based strictly on subject-matter jurisdiction, the court need not address the parties' arguments regarding personal jurisdiction, service of process, or failure to state a claim.

5

subject-matter jurisdiction may be raised by a party . . . at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citation omitted). Once a court's subject-matter jurisdiction is called into question, the party asserting jurisdiction bears the burden of establishing it by a preponderance of the evidence. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). If, at any time, a "court determines . . . that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").

"Federal courts have long recognized that Indian tribes possess a unique legal status." *Valenzuela v. Silversmith*, 699 F.3d 1199, 1202 (10th Cir. 2012). Because Indian tribes are "distinct political entities" that "retain powers of self-government that predate the Constitution," "[c]onstitutional provisions that limit federal or state authority do not apply" to them. *Id.* Thus, in 1968, Congress passed ICRA "to secur[e] for the American Indian the broad constitutional rights afforded to other Americans, and thereby . . . protect individual Indians from arbitrary and unjust actions of tribal governments." *Poulson v. Tribal Court for the Ute Indian Tribe of the Uintah & Ouray Reservation*, No. 2:12-CV-497 BSJ, 2013 WL 1367045, at *1 (D. Utah Apr. 4, 2013) (unpublished) (internal quotation marks omitted) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 61 (1978)).

Given that the United States recognizes Indian tribes as distinct sovereign governments, they enjoy tribal sovereign immunity, *see Ordinance 59 Ass'n v. U.S. Dep't of Interior Sec'y*, 163 F.3d 1150, 1153 (10th Cir. 1998), and courts have extended that immunity to a tribe's governing officials, *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997) ("[T]ribal

immunity protects tribal officials against claims in their official capacity."); *Kenai Oil & Gas, Inc. v. Dep't of Interior*, 522 F. Supp. 521, 531 (D. Utah 1981), *aff'd and remanded sub nom. Kenai Oil & Gas, Inc. v. Dep't of Interior of U.S.*, 671 F.2d 383 (10th Cir. 1982) ("[C]laims against the members of the Business Committee are essentially against the tribe itself and are thus barred . . . by the tribe's sovereign immunity."). Because Indian tribes and their officials enjoy such immunity, "absent explicit waiver of immunity or express authorization by Congress, federal courts do not have jurisdiction to entertain suits against an Indian tribe." *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1277 (10th Cir. 2006).

Here, Plaintiffs assert subject-matter jurisdiction under ICRA by claiming that Defendants violated certain rights enumerated in Section 1302 of ICRA. Section 1302, however, "does not waive tribal sovereign immunity and does not provide a civil cause of action in federal court against tribal officials." *Valenzuela*, 699 F.3d at 1203. Rather, the only avenue that tribal members have to seek relief for violations of Section 1302 is to file a writ of habeas corpus pursuant to Section 1303. *Santa Clara*, 436 U.S. at 58 (explaining that the "only remedial provision expressly supplied by Congress" is the writ of habeas corpus); *Valenzuela*, 699 F.3d at 1203. Section 1303 provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his [or her] detention by order of an Indian tribe." 25 U.S.C. § 1303. The Tenth Circuit has interpreted the term "detention" to be "analogous to the 'in custody' requirement contained in the [other] federal habeas statute[s]."[4] *Valenzuela*, 699 F.3d at 1203 (quoting *Walton*, 443 F.3d at 1279 n.1).

In order to obtain habeas relief under Section 1303, a plaintiff must satisfy two prerequisites. *See Poulson*, 2013 WL 1367045, at *2. First, for a federal court to have subject-

---

[4] In light of the Tenth Circuit's interpretation that "detention" and "in custody" are analogous, the court will use the two terms interchangeably throughout this decision.

matter jurisdiction under Section 1303, a plaintiff must establish that he or she is "in custody." *Id.* Second, a plaintiff must "exhaust[] all tribal remedies." *Id.* (citing *Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010) ("[A]ll federal courts addressing the issue mandate that two prerequisites be satisfied before they will hear a habeas petition filed under the ICRA: The petitioner must be in custody, and the petitioner must first exhaust tribal remedies.")). Because the court concludes that Plaintiffs have failed to establish that they are "in custody," the court will not address tribal exhaustion.[5]

Under Section 1303, a plaintiff is considered "detained" or "in custody" only if he or she is subject to a "a severe actual or potential restraint on liberty." *Oviatt*, 733 F. App'x at 932 (citing *Jeffredo*, 599 F.3d at 919). Yet, "[h]abeas relief does address more than actual physical custody, and includes parole, probation, release on one's own recognizance pending sentencing or trial, and *permanent banishment*." *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 714 (2d Cir. 1998) (emphasis added).

In this case, Plaintiffs contend that their temporary banishment of five years renders them in "detention" for purposes of Section 1303. The Tenth Circuit has yet to decide whether banishment is a severe enough restraint on individual liberty to constitute a detention. *See Walton*, 443 F.3d at 1279 n.2. Thus, in support of their argument, Plaintiffs rely on the Second Circuit's decision in *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996).

---

[5] While the court will not address the parties' exhaustion arguments, the court finds it necessary to clarify the tribal exhaustion doctrine. In both parties' moving papers, the parties suggest that, for this court to have *jurisdiction* over Plaintiffs' claims, Plaintiffs must both establish the "in custody" requirement and exhaust all tribal remedies. *See* Def.'s Mot. to Dismiss [ECF No. 45], at 9; Pl.'s Opp'n to Def.'s Mot. to Dismiss [ECF No. 47], at 11. While the "in custody" requirement is a jurisdictional prerequisite, *see Oviatt v. Reynolds*, 733 F. App'x 929, 932 (10th Cir. 2018) (unpublished), the exhaustion requirement, on the other hand, is not, *see Valenzuela*, 699 F.3d at 1206. The Tenth Circuit has explained that the "tribal exhaustion rule is based on 'principles of comity' and is not a *jurisdictional* prerequisite to review." *Id.* (emphasis added). Thus, to say that a plaintiff must meet both prerequisites for a court to have jurisdiction over a Section 1303 habeas petition is legally incorrect. Instead, a plaintiff must establish the "in custody" requirement to satisfy jurisdiction and the exhaustion requirement to satisfy principles of comity.

In *Poodry*, the Second Circuit held that members of the Tonawanda Band of Seneca Indians had demonstrated that they had suffered sufficiently severe restraints on their individual liberty by being banished from their tribe. *Id.* at 896–901. Hence, Plaintiffs contend that their temporary banishment is sufficient to constitute a "detention." The court, however, finds Plaintiffs' reliance on *Poodry* to be misplaced. First, unlike the temporary nature of the banishment at issue in this case, the banishment in *Poodry* was permanent.[6] *Id.* at 893; *see also Shenandoah*, 159 F.3d at 714 (citing *Poodry* for the proposition that "[h]abeas relief does address more than actual physical custody, and includes . . . permanent banishment"). Second, virtually every court that has had occasion to address banishment under Section 1303 has concluded that only permanent banishment—not temporary—is sufficient to meet the detention requirement under Section 1303. *See Tavares*, 851 F.3d at 875 ("[W]e do not need to decide whether to adopt *Poodry's* conclusion that tribal banishment orders amount to 'detention' under § 1303, because even under *Poodry's* logic, the Second Circuit limited habeas jurisdiction only to permanent banishment orders, not temporary exclusion orders like those in this case."); *Poulson*, 2013 WL 1367045, at *2 (citing *Shenandoah* for the proposition that habeas relief addresses permanent banishment); *Mitchell v. Seneca Nation of Indians*, No. 12-CV-119-A, 2013 WL 1337299, at *3 (W.D.N.Y. Mar. 29, 2013) (unpublished) ("[S]hort of an order of permanent banishment, federal courts have been reluctant to find tribal restraints severe enough to warrant habeas review."). Indeed, albeit in an unpublished decision, the Tenth Circuit has also recognized the important distinction between temporary and permanent banishment.[7] *See Oviatt*, 733 F. App'x at 932 (explaining that "even

---

[6] In addition to the fact that the banishment order in *Poodry* was permanent and therefore distinct from the instant case, scholars have extensively criticized *Poodry* for "disrupting the balance Congress struck in the ICRA between preserving tribal sovereignty and upholding the rights of individual tribe members." *Tavares v. Whitehouse*, 851 F.3d 863, 876 n.14 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1323 (2018).
[7] While the Tenth Circuit did analyze the permanent vs. temporary distinction, the court reiterated that it had "not decided whether banishment satisfies the statutory requirement of detention." *Oviatt*, 733 F. App'x at 932.

in the Second Circuit, a tribal member is considered 'detained' only when permanently banished from the tribe," and noting that the plaintiffs failed to "present[] evidence of a permanent prohibition from entering the Ute Tribe's land").

Despite the weight of authority against them, Plaintiffs contend that their temporary banishment is sufficient to confer jurisdiction under Section 1303. Specifically, Plaintiffs point to the fact that the Tenth Circuit has defined Section 1303's "detention" language to be analogous to the "in custody" language in other habeas statutes, and that under other habeas statutes, the duration of the detention is irrelevant. To support this argument, Plaintiffs cite the district court's decision in *Tavares v. Whitehouse*, No. 2:13-CV-02101-TLN, 2014 WL 1155798, at *10 (E.D. Cal. Mar. 21, 2014), *aff'd in part*, *appeal dismissed in part*, 851 F.3d 863 (9th Cir. 2017) (unpublished). Yet, Plaintiffs' reliance on this case too is misplaced, and the court finds their argument unavailing. First, while the district court recognized, as Plaintiffs assert, that "in the ordinary criminal habeas context, the temporary duration of the detention is irrelevant," the court ultimately concluded that "temporary exclusion is not a severe enough restraint on liberty to constitute 'detention.'"[8] *Id.* Second, the Second Circuit has also noted that the terms "detention" and "in custody" appear to be "interchangeable[] in the habeas context." *Poodry*, 85 F.3d at 891. Yet, despite that interpretation, the Second Circuit has still determined that Section 1303 habeas relief applies only in cases involving permanent banishment. *See Shenandoah*, 159 F.3d at 714. Third, in spite of the two terms being interchangeable, the Tenth Circuit's recent decision in *Oviatt* implies that banishment must be permanent to constitute a detention. *See*

---

[8] Significantly, the court reached this decision even though the banishment duration for one of the plaintiffs was for ten years—double the five-year banishment imposed upon Plaintiffs. *Tavares*, 2014 WL 1155798, at *4.

*Oviatt*, 733 F. App'x at 932. Therefore, the court is unpersuaded that temporary banishment constitutes detention simply based on the interchangeability of "detention" and "in custody."[9]

Apart from Plaintiffs' preceding arguments, the court finds that Plaintiffs have simply failed to articulate sufficient facts to support their claim that they have been detained. In this case, Plaintiffs contend that they have been stripped of their homes, employment, retirement plans, health insurance, and healthcare and precluded from participating in tribal ceremonies and cultural events. These allegations are rather similar to the allegations made by the plaintiffs in *Shenandoah*. There, the plaintiffs' complaint alleged:

> [T]hat . . . the . . . plaintiffs were suspended or terminated from employment positions, lost their "voice[s]" within the Nation's governing bodies, lost health insurance, were denied admittance into the Nation's health center, lost quarterly distributions paid to all Nation members, were banned from various businesses and recreational facilities such as the casino, Turning Stone park, the gym, and the Bingo hall, were stricken from Nation membership rolls, were prohibited from speaking with a few other Nation members, and were not sent Nation mailings.

*Shenandoah*, 159 F.3d at 714. Under these facts, the Second Circuit opined that "[a]lthough the alleged misconduct, if true, is serious, it is insufficient to bring plaintiffs within ICRA's habeas provision."[10] *Id.* Thus, given the similarities between the allegations in *Shenandoah* and the present case, the court, like the Second Circuit, is persuaded that Plaintiffs have failed to establish that they have been or are being detained for purposes of Section 1303.

---

[9] It is worth noting that the Ninth Circuit has distinguished the "detention" language in ICRA from the "in custody" language in other habeas statutes. *Tavares*, 851 F.3d at 876. Specifically, the Ninth Circuit has opined that "Congress's choice of 'detention' rather than 'custody' in § 1303" is "a meaningful restriction on the scope of habeas jurisdiction under the ICRA," and as such, a "temporary exclusion is not tantamount to a detention." *Id.* at 876–77. In light of the Tenth Circuit's reasoning in *Oviatt*, however, the court is not convinced that the Ninth Circuit's interpretation necessarily conflicts with the Tenth Circuit's interpretation of "detention" and "in custody." Furthermore, given the Second Circuit's interpretation of the terms and its decision in *Shenandoah*, the court is persuaded that even if duration is irrelevant in the normal habeas context, when it comes to jurisdiction under ICRA, banishment must be permanent to constitute a detention.

[10] The Second Circuit noted, however, that the plaintiffs in *Shenandoah* did not specifically allege that they had been banished. *Shenandoah*, 159 F.3d at 714. While that is not the case here given that Plaintiffs have indeed been banished, the resemblance of the two sets of allegations nevertheless lends support to the court's conclusion that Plaintiffs' allegations are insufficient to constitute "detention."

11

Lastly, in reaching its conclusion that banishment must be permanent to have jurisdiction under Section 1303, the *Tavares* district court expressed concern regarding its authority to adjudicate a case involving an Indian tribal government. This court too shares those concerns and finds the *Tavares* district court's reasoning regarding them to be particularly pertinent:

> [B]ecause the burden is on Petitioners as the proponents of federal jurisdiction, the Court hesitates to expand the scope of federal jurisdiction in the absence of any authority. The presumption that the Court lacks jurisdiction is of particular force here because Petitioners challenge the decision of an Indian tribal government. As the Supreme Court has repeatedly emphasized, Congress' authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members correspondingly restrained. Thus, as the Ninth Circuit observed in *Jeffredo* and *Lewis*, even though this case is deeply troubling on the level of fundamental substantive justice, the Court is not in a position to modify . . . doctrines of sovereign immunity. This is a matter in the hands of a higher authority than our court.

*Tavares*, 2014 WL 1155798, at *11.

The court therefore joins the clear weight of authority and concludes that for banishment to constitute detention under Section 1303, it must be permanent. Thus, because Plaintiffs' banishment is of a limited duration, they have failed to establish the "in custody" requirement. Consequently, this court lacks subject-matter jurisdiction, and Plaintiffs' complaint and petition must be dismissed.

**B. Motion for Immediate Release**

Prior to Defendants' Motion to Dismiss, Plaintiffs filed a Motion for Immediate Release wherein they requested that the court release them from unlawful restraints allegedly imposed upon them by Defendants and reinstate their tribal rights. "An inmate seeking federal habeas relief must, in order to obtain release pending a determination on the merits of his petition, make a showing of exceptional circumstances or demonstrate a clear case on the merits of his habeas petition." *United States v. Palermo*, 191 F. App'x 812, 813 (10th Cir. 2006) (unpublished)

12

(citing *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981)). While the Tenth Circuit has yet to apply this standard to cases involving habeas petitions under Section 1303, at least one court in this Circuit has. *See Coriz v. Rodriguez*, 347 F. Supp. 3d 707, 715 (D.N.M. 2018).

Plaintiffs contend that they have easily established exceptional circumstances and demonstrated a clear case on the merits and are therefore entitled to the relief that they seek. Yet, Plaintiffs' motion relies on the premise that this court enjoys subject-matter jurisdiction under ICRA, and, as described above, the court has determined that it lacks such jurisdiction in this case. Accordingly, because the court lacks subject-matter jurisdiction, Plaintiffs' motion must be denied.

## CONCLUSION

Based on the foregoing reasoning, Defendants' Motion to Dismiss [ECF No. 45] is hereby GRANTED, Plaintiffs' complaint and petition are dismissed with prejudice, and Plaintiffs' Motion for Immediate Release [ECF No. 20] is DENIED. Consequently, Defendants Edred Secakuku, Ronald Wopsock, and Sal Wopsock's individual motions to dismiss [ECF Nos. 62, 67, and 68] are DENIED as moot.

Dated this 3rd day of December, 2019.

BY THE COURT:

DALE A. KIMBALL
United States District Judge